IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01246-MJW

CHERYL E. MOSLEY,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,
Social Security,

Defendant.

---

## ORDER AFFIRMING ALJ'S DECISION DENYING SOCIAL SECURITY BENEFITS

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

Upon consent of the parties and pursuant to the Order of Reference dated

January 9, 2015 (Docket No. 23), this civil action was referred to the Magistrate Judge

"for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of

Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c).

In this case, plaintiff, Cheryl Mosley, challenges the final decision of the

Commissioner of Social Security ("Commissioner") denying plaintiff's application for

disability insurance benefits pursuant to section 205(g) of the Social Security Act, 42

U.S.C. § 405(g) (the "Act").  On her application, she alleged disability as of March 1,

2011.  (Docket No. 8-5 at 9, Administrative Record ["AR"] 137).  After a video hearing

before Administrative Law Judge ("ALJ") Paul R. Armstrong, plaintiff's claim was denied

in a written decision dated October 16, 2012.  (Docket No. 8-2 at 32-46, AR 31-45).

2

The Appeals Council denied plaintiff's Request for Review on January 28, 2014 (Docket No. 8-2 at 10, AR 9-12), and thus the ALJ's decision is the final decision of the Commissioner.

Plaintiff now appeals that final decision.  More specifically, plaintiff raises the following errors the ALJ allegedly committed in rendering her decision: (1) the ALJ failed to articulate specific and legitimate reasons for rejecting the opinions of the treating specialist and the consultative examiner and (2) the ALJ failed to provide sufficient reasons to reject the plaintiff's subjective complaints.

The court has very carefully reviewed the Complaint (Docket No. 1), defendant's Answer (Docket No. 7), plaintiff's Opening Brief (Docket No. 13), defendant's Response Brief (Docket No. 15), plaintiff's Reply (Docket No. 16), the entire case file including the AR (Docket No. 8), and the applicable case law, statutes, and regulations.  The court now being fully informed makes the following findings, conclusions of law, and Order. The court finds, substantially for the reasons stated in the defendant's very thorough Response Brief (Docket No. 15), that the ALJ's decision denying benefits should be affirmed.  The court adopts and incorporates the Statement of the Facts section contained in the defendant's Response Brief.

## STANDARD OF REVIEW

This court's review of the ALJ's determination is limited to determining whether the ALJ's decision is supported by substantial evidence and whether the Commissioner, through the ALJ, applied the correct legal standards.  See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more

than a scintilla, but less than a preponderance." Id. (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)).  "Evidence is not substantial if it is overwhelmed by other evidence in the record."  Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the record and the arguments of counsel, the court does not reexamine the issues de novo, Sisco v. United States Dep't of Health & Human Servs., 10 F.3d 739, 741 (10th Cir. 1993), nor does it re-weigh the evidence or substitute its judgment for that of the Commissioner, Salazar v. Barnhart, 468 F.3d 615, 621 (10th Cir. 2006).  Thus, even when some evidence may have supported contrary findings, the court "may not displace the agency's choice between two fairly conflicting views," even if the court may have "made a different choice had the matter been before it de novo." Oldham v. Astrue, 509 F.3d 1254, 1257-58 (10th Cir. 2007).  This court has applied this standard to each of the challenges raised by plaintiff in this appeal.

An individual "shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).  The Commissioner has developed a five-step sequential evaluation process for determining whether a claimant is disabled under the Act.  See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Id. at 750.  "The claimant bears the burden of proof through step four of the analysis." Neilson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At the fifth step,

4

the burden shifts to the Commissioner to show that the claimant can perform work that exists in the national economy.  Id.

Here, at step one, the ALJ determined that the plaintiff has not engaged in substantial gainful activity since March 1, 2011, the alleged onset date.  (AR 36).

At step two, the ALJ found that the plaintiff has had severe impairments, namely, degenerative disc disease and obesity.  (AR 36).  Furthermore, the ALJ determined that plaintiff's mental impairment of adjustment disorder does not cause more than minimal limitation in her ability to perform basic mental work activities and therefore is not severe.  (AR 36).

Next, at step three of the sequential evaluation process, the ALJ found that the plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one of the impairments contained in the Listings.  (AR 38).

At step four, the ALJ must determine a claimant's residual functional capacity ("RFC").

> . . . A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). . . .
>
> If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. However, . . . [t]he decision maker

> must then consider all relevant facts to determine whether the claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations.
>
> . . .
>
> Nonexertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain. . . .

Williams, 844 F.2d at 751-52.  In deciding that plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, the ALJ has to determine plaintiff's RFC based on all the relevant medical and other evidence in the case record.  RFC determinations are for the ALJ to make "based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective complaints."  Poppa v. Astrue, 569 F.3d 1167, 1170-71 (10th Cir. 2009).  See 20 C.F.R. § 404.1546 (providing ALJ is responsible for assessing RFC).

Here, the ALJ found that the plaintiff has the RFC to perform a full range of light work as defined in 20 C.F.R. § 404.1527.  (AR 38).  The ALJ then determined that the plaintiff is capable of performing past relevant work as a waitress, which does not require the performance of work-related activities precluded by plaintiff's RFC.  (AR 44).  Although he was not required to do so, the ALJ made alternative findings for step five of the sequential evaluation process, utilized the services of a vocational expert, and found that there were other jobs existing in the national economy that plaintiff could perform, namely, the job of a housekeeper of which there were approximately 6,400 jobs regionally and 378,000 nationally.  (AR 44-45).  Consequently, the ALJ determined

6

that the plaintiff has not been under a disability, as defined in the Act, from March 1, 2011, through the date of the decision, October 16, 2012.  (AR 45).

## ANALYSIS

**Opinions of the Treating Specialist and the Consultative Examiner.**  Plaintiff first asserts that the ALJ failed to articulate specific and legitimate reasons for rejecting the opinions of the treating specialist and the consultative examiner.

"Generally an ALJ should give greater weight to the opinion of a treating physician than to that of a consultant or non-examining physician, . . . but opinions from treating physicians are not dispositive . . . ."  Barnhill-Stemley v. Colvin, 607 Fed. Appx. 811, 816 (10th Cir. Apr. 23, 2015) (citations omitted).  "A treating physician's opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."  Knight ex rel. P.K. v. Colvin, 756 F.3d 1171, 1176 (10th Cir. 2014) (internal quotation marks omitted).  "Where, as here, the ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ must decide whether the opinion should rejected altogether or assigned some lesser weight."  Newbold v. Colvin, 718 F.3d 1257, 1265 (10th Cir. 2013) (internal quotation marks omitted).  The ALJ must give good reasons for the weight he assigns.  See Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003).  "Even if an opinion is not entitled to controlling weight, the ALJ must still weigh the opinion in light of the factors set forth at 20 C.F.R. []§ 404.1527 . . . ."  Mendoz v. Colvin, 588 Fed. Appx. 776, 783 (10th Cir. Oct. 21, 2014).  The factors to be considered are:

7

(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is unsupported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting Watkins, 350 F.3d at 1301). The ALJ need not explicitly discuss each factor, see Oldham, 509 F.3d at 1258, but must be sufficiently specific to permit meaningful review. Giuliano v. Colvin, 577 Fed. Appx 859, 862 (10th Cir. Sept. 2, 2014). Here, the ALJ provided a thorough summary the medical evidence of record, including the reports of the treating, consultative, and non-examining physicians, and considered the factors above when providing his reasoning for the weight he gave to the opinions of the treating doctor.

Plaintiff takes issue with the ALJ's stated reasons for rejected treating specialist Dr. Matsumura's opinions. The ALJ stated the following:

. . . There were also reports and follow-up from Brittany Malstimura [sic], M.D. indicating that the claimant was unable to work for various periods, including 06/06/12 to 7/11/12 (EX 15F/3) and again from 08/01/2012 to 08/29/2012 (EX 16F/3). This same doctor also completed a "'Lumbar Spine Questionnaire and Listing" indicating basically that the claimant could sit/stand/and walk less than 2 hours each, occasionally lift 5 pounds and never twist, stoop, crouch, climb ladders or stairs, as well as needing unscheduled breaks and missing more than 4 days/month due to her symptoms (EX 13F/45-50). This assessment was affirmed on August 6, 2012 (EX 15F/6). **I give little weight to these assessments as the doctor cites evidence that was not noted by other doctors and also seems to rely heavily on the claimant's subjective report of symptoms**. . . . Dr. Malstimura's [sic] [reports] . . . were prepared for workers compensation purposes and apply standards that are not the same as those involved in a social security case. However, **I give little weight to the opinions of Dr. Malstimura [sic] in this matter as they do not seem a fair and accurate presentation of the claimant's**

8

**symptoms and abilities based upon the records as a whole**. . . .

(AR 43-44, Docket No. 8-2 at 44-45) (emphasis added).

With regard to the second sentence highlighted above, plaintiff asserts that that

reason for rejecting the treating doctor's opinion is not specific and thus gives the court

no guidance as to what the ALJ meant.  With regard to the first sentence highlighted

above, plaintiff asserts that "[t]he fact that Dr. Matsumura had additional evidence

available to her because she was the long time treating doctor actually adds weight to

her opinion and detracts from the weight of the other non-treating sources.  This is the

exact type of information that the regulations discuss when the [sic] describe why a

treating source should be afforded more weight than non-treating doctors.  In any event,

the ALJ's stated reason is vague and not specific enough for review.  The ALJ does not

state what evidence that Dr. Matsumura relied on that she should not have.  Therefore,

the court cannot know if the ALJ's reason is convincing or even reasonable.  20 C.F.R.

§ 404.1527.  Moreover, the ALJ did not state what evidence Dr. Matsumura cited to that

was not cited to by other doctors.  This reason is vague and unsupported by any

detailed explanation.  In any event, if the ALJ thought that Dr. Matsumura did not

adequately explain why these limitations were warranted, he had a duty to contact Dr.

Matsumura for clarification on this issue. . . ."  (Docket No. 13 at 7-8).

Furthermore, plaintiff asserts that what is highly relevant here is that most of the

doctors who examined her had very similar examination findings; it was only their

conclusions that differed.  Therefore, plaintiff contends that the ALJ should have

deferred to the long-time treating doctor consistent with the regulations, 20 C.F.R. §

404.1527, and Social Security Ruling 96-2.  According to plaintiff, for a medical opinion

to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence. Instead, whether a medical opinion is well-supported will depend on the facts of each case.  Plaintiff contends that the facts here are that she has severe back pain as evidenced by nerve root impingement on MRI and positive nerve conduction studies, as well as objective findings from repeated clinical examinations by the long-time treating specialist.  Furthermore, these impairments resulted in the need for painful steroid injections and severely invasive spinal surgery, which failed to help her pain, and she is still in pain.  In sum, plaintiff asserts that the ALJ did not discuss the relevance of the long-term treating relationship between plaintiff and Dr. Matsumura as directed by the regulations.

Plaintiff notes that Dr. Matsumura opined in April 2012 that plaintiff would miss work more than three times per month, would need frequent breaks every ten to fifteen minutes, and could lift five pounds rarely and less than five pounds occasionally.  (AR 396).  Dr. Matsumura did not merely check off boxes as her assessment; she provided objective findings and observations that she had made through her long-time treatment of plaintiff.  Her subsequent notes reflect that plaintiff did not improve and remained totally disabled up until late 2012 at which point she needed a spinal cord stimulator because surgery had not improved plaintiff's condition.

Plaintiff further asserts that the ALJ also failed to provide specific and legitimate reasons for rejecting the opinion of the consultative examiner that the ALJ stated he was giving "significant weight."  Plaintiff notes that Dr. Bret Barney opined that it would be medically helpful for plaintiff to have a cane for long distances and for walking on

uneven terrain.  (AR 312).  Nevertheless, the ALJ did not even mention that limitation in his two-sentence summary of Dr. Barney's report.  Plaintiff thus asserts that both the consultative examiner and the long-time treating doctor agree that a cane is needed and reasonable.  She contends that there is no way a person can perform a waitress job with the use of a cane.  Therefore, this error (out of the many allegedly made by the ALJ) would preclude past work at step four of the sequential evaluation process.

Plaintiff further notes that the ALJ also rejected Dr. Barney's postural limitations and the ability to sit only for up to four hours, speculating that these limitations were based on plaintiff's subjective complaints.  Plaintiff contends this is not true as Dr. Barney noted objective findings on examination such as positive straight leg raising and difficulty performing some of the examination testing.  Plaintiff notes that Dr. Barney's opinions were based on a clinical evaluation.  She submits that the ALJ is not a doctor and cannot just summarily reject certain limitations because he does not like them.

Upon review of the ALJ's detailed decision as a whole and the administrative record, this court finds no reversible error in the ALJ's evaluation of the treating and consultative doctors' opinions and in the ALJ's assessment of the plaintiff's limitations. As correctly asserted by defendant, the question before this court is not whether the evidence of record could reasonably support other conclusions.  Rather, the court looks to see if the decision is supported by substantial evidence and applied the correct legal standards.

Looking at the ALJ's entire decision, not just separate sentences highlighted by plaintiff, this court finds that the ALJ performed the required analyses and applied the correct legal standards, and his conclusion that the doctors' opinions are entitled to little

or no weight are not inconsistent with the substantial evidence in the record.  While

plaintiff argues that the ALJ improperly substituted his opinion for that of the treating and

consultative physicians, it is the ALJ's job to determine whether a physician's opinion is

supported by his own treatment records and the record as a whole.  See 20 C.F.R. §

404.1527; White v. Barnhard, 287 F.3d 903, 907-08 (10th Cir. 2001); Castellano v.

Secretary of HHS, 26 F.3d 1027, 1029 (10th Cir. 1994).

Here, there was evidence that conflicted with Dr. Matsumura's opinions, such as

the report of Dr. Jeffrey Wunder who conducted an independent medical exam, Dr. Bret

Barney, the Social Security examining physician, and Dr. James McElhinney, a non-

examining physician who completed a RFC assessment after reviewing the medical

evidence of record.  The ALJ detailed the reports of those doctors and explained why he

gave significant weight to the latter two doctors' opinions and greater weight to Dr.

Wunder's opinions than he gave to the treating doctor's opinions.  For example, the ALJ

stated that "[a] fair reading of the evidence by Dr. Wunder in his IME summary indicates

that the claimant's neurological status is normal, she had inconsistent seated and

supine straight leg raising testing, and the bulk of the evidence weighs against any

nerve root compression on the right side (see EX 18F)."  (AR 43, Docket No. 8-2 at 44).

Moreover, the ALJ noted that Dr. Wunder noted that plaintiff's pain behaviors were high,

determined that the plaintiff had chronic low back pain without a clear pain generator,

and opined that psychological factors were affecting symptom presentation, there was

probable symptom embellishment, and it was a classic case of plaintiff's symptoms

being treated more than objective findings.  (AR 41-42, Docket No. 8-2 at 42-43).

It was not unreasonable for the ALJ to discount the medical opinions that

12

necessarily relied on plaintiff's own subjective assertions rather than objective medical evidence.  See Oldham, 509 F.3d at 1257; White, 287 F.3d at 907-08 (a treating physician's opinion may be discounted when it is based on the claimant's subjective assertions rather than objective medical evidence).

While the court agrees that the ALJ's statement discounting Dr. Matsumura's opinion because she "cites evidence not noted by other doctors" (AR 43, Docket No. 8-2 at 44) could have been explained better, based upon a reading the ALJ's opinion as a whole, along with the entire record, the court finds that the ALJ's decision should be upheld.  See Davis v. Erdmann, 607 F.2d 917, 919 n.1 (10th Cir. 1979) ("While we may not supply a reasoned basis for the agency's action that the agency itself has not given . . . we will uphold a decision of less than ideal clarity if the agency's path may reasonably discerned.") (citations omitted).  As noted by defendant, the ALJ repeatedly noted that objective testing showed little to no abnormalities that could possibly be the anatomical source of plaintiff's reported right leg pain (AR 38-44), and the ALJ appeared to be highlighting the contrast between Dr. Matsumura's citation to supportive objective findings versus the lack of supportive evidence noted by other physicians.

The court further finds no merit to plaintiff's contention that it was improper for the ALJ to give little or lesser weight to Dr. Matsumura's opinion without first contacting her.  While the ALJ has a duty to develop the record, it remains the claimant's burden to establish she is disabled, i.e., how an impairment affects her functioning, through step 4.  See 20 C.F.R. § 404.1512(a).  Here, plaintiff did not meet that burden.  Furthermore, there was more than adequate medical records, including opinions and consultative reports, upon which the ALJ could make a decision.  Moreover, Dr. Matsumura's

13

evidence was not inadequate; rather, it did not support the limitations she assigned to the plaintiff.  See White, 287 F.3d at 908 ("it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [plaintiff's] treating physician' that triggers the duty").

In addition, the record does not support plaintiff's assertion that Dr. Matsumura and Dr. Barney both "agree that a cane is needed and reasonable."  (Docket No. at 9). Dr. Matsumura indicated by checking off a box that plaintiff needed a cane or other assistive device while engaging in occasional standing/walking (AR 396).  In contrast, Dr. Barney opined that a cane "would be medically helpful for long distances and uneven terrain."  (AR 312).  Dr. Barney's opinion is much more limited in scope and would not indicate that plaintiff could not do her past work or the other work set forth by the ALJ.  As detailed by the defendant (Docket No. 15 at 19, citing DOT Job No. 311.477-030), a waitress job requires walking neither far distances nor uneven surfaces.

**Pain/Credibility Determination.**  Plaintiff asserts that the ALJ failed to provide sufficient reasons to reject her subjective complaints in assessing her RFC.  The ALJ stated that he considered the plaintiff's symptoms, and he noted the two-step process he must follow when doing so.  The ALJ stated that:

> it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)–i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques–that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could

14

> reasonably be expected to produce the claimant's pain or other symptoms
> has been shown, the undersigned must evaluated the intensity,
> persistence, and limiting effects of the claimant's sumptoms to determine
> the extent to which they limit the claimant's functioning.  For this purpose,
> whenever statements about the intensity, persistence, or functionally
> limiting effects of pain or other symptoms are not substantiated by
> objective medical evidence, the undersigned must make a finding on the
> credibility of the statements based on a consideration of the entire case
> record.

(Docket No. 8-2 at 39-40, AR 38-39).  The ALJ then found under the first step that

plaintiff's medically determinable impairments could reasonably be expected to cause

the alleged symptoms.  However, under the second step, he determined that plaintiff's

statements concerning the intensity, persistence, and limiting effects of these symptoms

were not credible to the extent they are inconsistent with the ALJ's RFC assessment.

Plaintiff asserts that the ALJ did not conduct the mandated two-step analysis

properly.  (Docket No. 13 at 12).  She contends that "the ALJ decision is void of any

sufficient rationale at all as to why the ALJ ignored and disregards [plaintiff's][1]

testimony" and that "[t]he ALJ's subjective pain analysis is almost non-existent and what

little analysis he provided is vague and unsupported by the record."  (Docket No. 13 at

12, 14).  More specifically, plaintiff first asserts that the ALJ's rejection of her testimony

based on a belief that it was not fully credible because it lacks support in the objective

medical evidence is legally insufficient and contravenes established case law and

---

[1]Plaintiff actually asserts that the decision lack sufficient rationale as to why the
ALJ ignored and disregarded the testimony of "**Ms. Collins**."  (Docket No. 13 at 12)
(emphasis added).  In her Opening Brief, plaintiff subsequently again mistakenly refers
to "Ms. Collins" and "Judy Collins." (See Docket No. 13 at 13 and 14-15).  The court
assumes these are typographical cutting and pasting errors.  It would behoove plaintiff's
counsel to better proofread his briefs as there are quite a few typographical errors
throughout his Opening Brief here which were distracting.

regulations.  According to plaintiff, a rejection of a claimant's testimony based on a lack of objective evidence is always legally insufficient.  She asserts that "[t]he standard requires consideration of 'excess pain' not simply the degree of pain limitation established by the objective medical evidence."  (Docket No. 13 at 13) (citing Luna v. Bowen, 834 F.2d 161, 164 (10th Cir. 1987)).  She contends that indeed the regulations specifically prohibit rejecting subjective pain testimony solely on the basis of objective medical evidence.  (citing 20 C.F.R. § 404.1529(c)(2) (we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements)).  In addition, plaintiff notes that the ALJ listed all of the medications plaintiff was using to help manage her pain, i.e., Percocet and Lidoderm patches, and stated that they were relatively effective in controlling her pain.  (AR 42).  Plaintiff claims this finding is simply not supported by the record as her pain is severe and unmanageable, which is why she had to resort to surgery, which did not relieve her pain as confirmed by the neurosurgeon.  Next, plaintiff takes issue with portions of Dr. Wunder's report noted by the ALJ when analyzing plaintiff's credibility, such the doctor noting inconsistent statements made by plaintiff concerning the date of her injury, "symptom embellishment," and the presence of an unspecified number of "Waddell" signs and high pain behavior.  (Docket No. 13 at 15). In addition, plaintiff asserts that her minor daily activities do not detract from her credibility and that the ALJ also erred in failing to enhance her credibility due to her excellent work history.  In sum, the plaintiff contends that the ALJ's reasons for rejecting her testimony are simply not sufficient.

16

This court disagrees.  "Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence."  Wilson v. Astrue, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks omitted).  When evaluating a claimant's subjective statements regarding pain, an ALJ should consider factors such as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Id. at 1145 (internal quotation marks omitted).  An ALJ is not required to address each factor in his decision.  See Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000) (observing that credibility assessment does not require "formalistic factor-by-factor recitation of the evidence" but instead requires reference to specific evidence on which the ALJ relies).

Here, the court agrees with the defendant that the ALJ reasonably found that plaintiff's complaints concerning the degree of her pain were not entirely credible in light of inconsistencies with the balance of the record.  As noted by defendant, the plaintiff points out factors that arguably enhance her credibility, such as her work history prior to March 2011, but it is the record as a whole that the ALJ must consider in assessing credibility.  In the Response Brief, the defendant accurately details the objective medical evidence that the ALJ observed did not support plaintiff's allegations of debilitating right leg pain as well as the additional factors noted by the ALJ when making his findings

regarding plaintiff's credibility, i.e., her allegedly disabling 2010 injury did not prevent her

from continuing to work until March 2011 (AR 39), her reported daily activities were in

excess of what could be expected given her extreme complaints (AR 39), her

inconsistent statements regarding the date and source of her back injury per Dr.

Wunder's reports, and her demonstration of disproportionately high pain behaviors on

examination by Dr. Wunder.  (See Docket No. 15 at 12-14).  This court concludes that

the ALJ correctly applied legal standards and that his credibility findings are supported

by substantial evidence.

     **RFC Determination.**   It is the ALJ's responsibility, not a physician's, to assess

RFC.  See 20 C.F.R § 404.1546; 1996 WL 374183, at *2, 4 (Policy Interpretation).

"[T]here is no requirement in the regulations for a direct correspondence between an

RFC finding and a specific medical opinion on the functional capacity in question. [T]he

ALJ, not a physician, is charged with determining a claimant's RFC from the medical

record." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (internal quotations

omitted).

     Here, based on the record as a whole, the court finds that there is substantial

evidence to support the ALJ's findings concerning the plaintiff's limitations and RFC for

light work.  Since the ALJ found, using this RFC, that the plaintiff could perform her past

relevant work, it was unnecessary for the ALJ to continue to the fifth step of the

sequential evaluation process and make an alternative finding at that step that plaintiff

could perform other work as a housekeeper.  In any event, the court agrees with

defendant regarding the plaintiff's argument about the ALJ's decision being too vague

for review in light of the lack of a DOT job number for the other work as a housekeeper

(Docket No. 13 at 10).  Such argument is not well taken in view of the fact that the ALJ specifically asked plaintiff's counsel whether he needed the DOT number for that position, and counsel indicated that he did not.  (AR 77).

## CONCLUSION

While this court may well have reached a different conclusion concerning the weight to be given to the evidence of record, the court may not reweigh the evidence nor displace the agency's choice between two fairly conflicting views.  Based on the administrative record, and given the narrow scope of review, this court finds that the ALJ's decision is supported by substantial evidence and the ALJ committed no legal error in reaching his adverse finding.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the ALJ's denial of disability benefits is **AFFIRMED**.  It is

**FURTHER ORDERED** that each party shall pay its own costs and attorney fees.


Date:  September 15, 2015                    s/ Michael J. Watanabe
       Denver, Colorado                      Michael J. Watanabe
                                             United States Magistrate Judge